IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Samuel A. Gray, Sr., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Criminal No.: 4:05-cr-888-TLW |
| vs. | ) | Civil No.: 4:10-cv-70200-TLW |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## ORDER

This matter is before the Court for consideration of the <u>pro se</u> motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 filed by Samuel A. Gray, Sr. ("petitioner").

On August 22, 2006, the petitioner was charged with 28 counts of criminal conduct in Second Superseding Indictment 4:05-888. Counts 1-18 charged the petitioner with violating 26 U.S.C. § 7202 and 18 U.S.C. § 2 by failing to pay employment taxes that where collected on behalf of and owed by four companies of which he was president and CEO. These four companies were Stardancer Casino, Inc.; Stardancer Casino Florida Corporation; Stardancer Casino Miami Beach Corporation; and Fernandina Cruises, Inc. (collectively referred to as "Stardancer Casinos"). Count 19 charged the petitioner with conspiracy to commit fraud and to defraud the United States, in violation of 18 U.S.C. § 371. Counts 20-22 charged the petitioner with committing mail fraud, in violation of 18 U.S.C. §§ 1341 and 2. Counts 23-25 charged the petitioner with receipt of stolen funds, in violation of 18 U.S.C. § 2315. Counts 26-28 charged the petitioner with money laundering, in violation of 18 U.S.C. §§ 1957 and 2.

1

On May 16, 2007, a jury convicted the petitioner of all 28 counts. (Doc. # 159). He was sentenced to 60 months as to each of Counts 1-19, 140 months as to Counts 20-22, and 120 months as to Counts 23-28, with all such terms running concurrently. (Doc. # 227). He also was sentenced to three years of supervised release at to each count, with all such terms running concurrently. (Doc. # 227).

The petitioner filed a direct appeal of his conviction and sentence. (Doc. # 233). On July 10, 2009, the United States Court of Appeals for the Fourth Circuit affirmed the convictions but vacated the sentence and remanded for resentencing because of an error in the amount of restitution ordered. United States v. Gray, No. 08-4406, 337 Fed. Appx. 365 (4th Cir. July 10, 2009) (Doc. # 285). The Fourth Circuit directed the Court to enter a new order of restitution, limiting restitution to the amounts contained in the offenses of conviction. On March 16, 2010, the Court issued an amended judgment, reducing the restitution amount to $2,960,538.36. (Doc. # 301).

On June 1, 2010, the petitioner filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Doc. # 306). On July 22, 2010, the petitioner's trial defense counsel, William F. Nettles, IV, submitted an affidavit responding to the petitioner's allegations. (Doc. # 315). On August 16, 2010, the Government filed a response to the petitioner's Section 2255 motion. (Doc. # 316). Subsequently, the Government submitted a motion for summary judgment. (Doc. # 318). The petitioner filed a response to the Government's motion (Doc. # 321) and an additional brief in support of his Section 2255 motion (Doc. # 322). The petitioner also submitted an affidavit in support of his motion. (Doc. # 323).

## 28 U.S.C. § 2255

United States Code, Title 28, Section 2255 provides that a prisoner in custody under sentence of a federal court may file a motion in the court which imposed the sentence to vacate, set aside, or correct the sentence. The statute states four grounds upon which such relief may be claimed: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C.A. § 2255(a). Generally, "28 U.S.C. § 2255 requires [a] petitioner to prove by a preponderance of the evidence that 'the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law.'" Leano v. United States, 334 F. Supp. 2d 885, 890 (D.S.C. 2004) (quoting 28 U.S.C. § 2255(a)). In Leano, the District Court noted that such is "the proof needed to allege a constitutional error." Id. at 890. "[T]he scope of review of non-constitutional error is more limited . . . ; a non-constitutional error does not provide a basis for collateral attack unless it involves a fundamental defect which inherently results in a complete miscarriage of justice, or is inconsistent with the rudimentary demands of fair procedure." United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999) (quotations and citations omitted). In deciding a 28 U.S.C. § 2255 motion, the Court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Court has thoroughly reviewed the motions, files, and records in this case, liberally construing petitioner's pro se motion, and finds that no hearing is necessary.

# BACKGROUND

The petitioner raises seven grounds for relief in his Section 2255 motion. These seven grounds for relief are set forth below verbatim:

1. Denial of effective assistance of counsel by not petitioning the Court for critically needed experts.

2. Denial of effective assistance of counsel by not arguing that it is the "offense of conviction" not the "relevant conduct" that must determine the offense level.

3. Denial of effective assistance of counsel by not arguing that Samuel Gray was denied a speed trial as guaranteed by the Sixth Amendment of the Constitution and the Speedy Trial Act of 1974.

4. Denial of effective assistance of counsel by not diffusing the money laundering counts by failing to present the merits of U.S. v. Santos later adjudicated by the United States Supreme Court.

5. Denial of effective assistance of counsel by not following up on discovery request to prosecution for minutes of grand jury testimony related to the testimony of bank embezzler Mark Steven Miller.

6. Denial of effective assistance of counsel by not effectively challenging the concept of willful blindness with case law and affirmative action by Mr. Gray.

7. Denial of effective assistance of counsel by not insisting that Mr. and Mrs. Gray be heard in their challenge of ex parte freeze order in the hearing ostensibly held for that purpose on November 8, 2006, before the Honorable Terry L. Wooten for the specific purpose of segregating untainted assets which were beyond the scope of the indictment. Such assets being both legitimate and necessary to hire attorneys and expert witnesses. This hearing was side tracked by a conflict of interest argument raised by Mr. and Mrs. Gray's attorneys, and referred to the U.S. Magistrate Judge, the Honorable Thomas E. Rogers, III for resolution. Judge Rogers ruled on the "conflict issue" but not on the primary matter regarding the freezing of Mr. and Mrs. Gray's untainted assets. Neither paid nor appointed attorneys revisited this crucial issue even though Mr. and Mrs. Gray strongly urged them to do so.

## **STANDARD OF REVIEW**

In examining a motion for summary judgment, the Court must determine whether there exists a genuine dispute of material fact. Fed. R. Civ. P. 56. Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine disputes of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249. Though this initial responsibility rests with the moving party, if the non-moving party "fails to properly address" the moving party's assertion of fact, the Court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed R. Civ. P. 56(e); see Celotex, 477 U.S. at 324-26. Thus, the plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. In such a situation, there can be "no genuine dispute as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322-23. The moving party is entitled to judgment as a matter of law because the non-moving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 323 (citation omitted).

## **DISCUSSION**

## **Ground One**

In Ground One of his Section 2255 motion, the petitioner asserts his attorney committed ineffective assistance of counsel by not petitioning the Court for funds for expert witnesses and calling said witnesses at trial. More specifically, the petitioner asserts William Simon, Darrell G. Smith, Nelson Fernandez, Carolyn Moore, Danny Batista, Sheila Milne, Lou Doleo, Debra Vitali, and Tony Markopolis should have been called as witnesses.

A claim of ineffective assistance of counsel is subject to collateral review pursuant to 28 U.S.C. § 2255. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficiencies prejudiced the petitioner's defense to the extent that he was denied a fair trial. Strickland v. Washington, 466 U.S. 668, 687-92 (1984). The petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. As the Court in Strickland observed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Id. (citation omitted).

In his affidavit, Mr. Nettles responds to the petitioner's allegations. (Doc. # 315). Nettles was appointed after the Court issued a protective order directing that "no property [alleged to be forfeitable] be disposed by Samuel Andrew Gray, Sr. and Marilyn D. Gray or any other individual or entity with control over the property owned by the Grays and that they protect and preserve the property until a hearing can be held." (Doc. 80). He indicates that the petitioner consulted with a forensic accounting firm based in Florida prior to the issuance of this protective order. (Doc. # 315). William Simon was associated with this firm. Nettles states that the Grays wanted to retain Simon's firm as an expert in their case. (Doc. # 315). According to Nettles, the firm quoted a flat fee of $250,000 for its services, which the Grays did not have the ability to pay. Id. Nettles did not attempt to obtain the money to pay this retainer because it was "ridiculously high" and an hourly fee would have been more appropriate. Id. Nettles also states that an expert was not consulted because the parties were not fighting over the amount of the taxes owed. Id. He asserts later in his affidavit that the case was not "'complex' as in hard to understand" but that "there was a lot of information to review" to prepare for trial. Id. at p. 7.

Nelson Fernandez, Carolyn Moore, and Danny Batista were all Stardancer corporate officers who the petitioner asserts would have aided his defense to Counts 19-22. (Doc. # 322). The petitioner provides no additional evidence in support of his assertion that these witnesses would have aided his defense to these counts. Nettles does not recall whether he spoke to these witnesses but

states that an unsuccessful attempt was made to locate and serve a subpoena on a Stardancer employee at the last minute, perhaps during trial.  (Doc. # 315).

As for Sheila Milne, the petitioner asserts that she "conducted an audit lasting several months, resulting in her praise of the company's internal controls and company records."  (Doc. # 306, attach. 1, p. 7).  Nettles indicates that the Court issued a subpoena for Milne upon his request and that an attorney from the Internal Revenue Service ("IRS") contacted him and told him the IRS would make every effort to quash the subpoena if he insisted on Milne's appearance.  (Doc. # 315). According to Nettles, the IRS gave a number of reasons for this and advised him that Milne's testimony would be unfavorable.  Id.  Nettles recalls that while Milne may have praised Stardancer's books, the issue in the case was not that Stardancer attempted to obscure taxes owed through the configuration of its books but that the taxes were not paid.  Id.  Nettles decided to release Milne from the subpoena.  Id.

Nettles states that he consulted with Darrell Smith, who was a former Assistant Regional Commissioner of the Criminal Investigative Division of the IRS.  Id.  Prior to being shut down by the Government, Stardancer hired Smith to assist it with the issue of unpaid taxes.  Id.  Nettles avers that his conversations with Smith and documentation Smith provided led him to believe that Smith would be a poor witness.  Id.  Attached to Nettles' affidavit is an email to the petitioner from Nettles dated April 3, 2007, in which Nettles explains why Smith would be "a very dangerous witness" to the petitioner.  (Doc. # 315, attach. 1).

With respect to Lou Doleo, Debra Vitali, and Tony Markopolis, Nettles indicates he contacted these potential witnesses by phone and determined they would not aid the petitioner's

defense. (Doc. # 315). The petitioner asserts in response that these individuals would have aided his defense, but he does not specify how they would have helped his defense. (Doc. # 322).

After careful consideration, the Court finds that the petitioner is not entitled to relief on Ground One of his Section 2255 motion. The petitioner has not sufficiently demonstrated that his attorney's decision not to call these witnesses or petition the Court for funds for expert witnesses resulted in his performance falling below an objective standard of reasonableness. Furthermore, the petitioner has not sufficiently shown how these witnesses would have aided his defense to the counts of criminal conduct with which he was charged, and thus he has not demonstrated a reasonable probably that the outcome of his trial would have been different if some or all of these witnesses had been called.

### Ground Two

The petitioner argues in Ground Two that his attorney committed ineffective assistance of counsel by not arguing it is the "offense of conviction" not the "relevant conduct" which must determine the offense level. The offense level for the count of conviction is determined by the offense of conviction and all relevant conduct. See U.S.S.G. § 1B1.3. Therefore, the defense attorney's performance was not deficient in failing to make the argument asserted by the petitioner, and the petitioner is not entitled to relief on Ground Two of his motion.

### Ground Three

In Ground Three, the petitioner asserts his attorney committed ineffective assistance of counsel by not arguing he was denied a speedy trial as guaranteed by the Sixth Amendment and the Speedy Trial Act.

Generally, the Speedy Trial Act requires that the trial of a defendant who has been charged in an indictment shall commence within seventy days of either (1) the indictment's filing date or (2) the defendant's first arraignment before the court, whichever occurs later. <u>See</u> 18 U.S.C. § 3161(c)(1); <u>see also</u> <u>United States v. Osteen</u>, 254 F.3d 521, 525 (4th Cir. 2001). However, this period may be tolled for many reasons. <u>See</u> <u>United States v. Hopkins</u>, 310 F.3d 145, 149 (4th Cir. 2002). For example, the seventy-day time period is tolled following a defendant's pre-trial motion, 18 U.S.C. § 3161(h)(1)(D), or if the court grants a continuance in order to serve "the ends of justice." 18 U.S.C. § 3161(h)(7)(A). For purposes of the Speedy Trial Act, a trial normally commences with the <u>voir</u> <u>dire</u> of the jury. <u>See</u> <u>United States v. A-A-A Elec. Co.</u>, 788 F.2d 242, 246 (4th Cir. 1986). Thus, a trial for purposes of the Speedy Trial Act commences on the date of jury selection.

The petitioner was initially indicted on August 24, 2005, and was arraigned on September 12, 2005. (Docs. 1, 9). On October 3, 2005, a pretrial conference was held at which the parties agreed on a continuance to the January term of Court and the petitioner waived his rights under the Speedy Trial Act. (Docs. 25, 26). On November 3, 2005, the Court entered an order stating the case would be continued until January 15, 2006. (Doc. # 27). On December 15, 2005, the petitioner moved for a continuance, and the Court granted a continuance until the April 2006 trial term. (Docs. 29, 30). Attached to the Court's Order is a waiver of Speedy Trial Act rights signed by the petitioner. (Doc. # 30, attach. 1). A superceding indictment against the petitioner was returned on January 24, 2006, (Doc. # 32), and an arraignment on the superceding indictment was held on February 8, 2006 (Doc. # 36). At a pretrial conference on March 29, 2006, the petitioner requested a continuance until the September term of Court and waived his rights under the Speedy Trial Act. (Doc. # 41). The United States Magistrate Judge presiding over the pretrial verbally granted the

continuance, and the District Judge signed a written order granting the continuance on April 29, 2006. (Doc. # 42). On August 22, 2006, a second superceding indictment was returned against the petitioner. (Doc. # 58). On August 23, 2006, the petitioner filed a consent motion for a continuance beyond the September term of Court. (Doc. # 59). The consent motion states that by adding his signature to the motion, the petitioner acknowledges his consent to the requested continuance and waives any rights under the Speedy Trial Act. (Doc. # 59). On September 6, 2006, the petitioner was arraigned on the Second Superceding Indictment. (Doc. # 65). At a pretrial conference on September 27, 2006, the petitioner requested a continuance beyond the December 2006 term of Court, the Magistrate Judge granted the request, and the petitioner waived his Speedy Trial rights. (Doc. # 69). A written order granting a continuance until the December 2006 term of Court was signed by the District Judge on October 3, 2006. (Doc. # 70). On November 22, 2006, the Magistrate Judge entered an Order granting the motion to withdraw filed by the petitioner's retained counsel. (Doc. # 84). On December 1, 2006, Mr. Nettles was appointed to represent the petitioner. (Doc. # 87). At a pretrial conference on November 29, 2006, the Magistrate Judge continued the case until the January term of Court and noted that the petitioner waived his speedy trial rights on the record at a previous hearing. (Doc. # 85). On January 4, 2007, the Court held a pretrial conference at which the District Judge directed the attorneys to propose a trial date. (Doc. # 94). On April 4, 2007, the case was set for jury selection on May 2, 2007, and trial on May 14, 2007. (Doc. # 96). On April 6, 2007, the trial date was changed to May 3, 2007. (Doc. # 98). On May 3, 2007, a jury was selected and the petitioner's trial began. (Docs. 136, 137).

In addition, there were a number of pretrial motions filed by the petitioner in this case. These included a motion for discovery and evidence submitted on August 24, 2006 (Doc. # 60); a motion

for disclosure of intent to use Rule 404(b) evidence filed on August 24, 2006 (Doc. # 61); a motion for discovery pursuant to the United States Sentencing Commission Guidelines filed on August 24, 2006 (Doc. # 62); a motion for discovery and inspection filed on December 11, 2006 (Doc. # 90); another motion for disclosure of intent to use Rule 404(b) evidence filed on December 11, 2006 (Doc. # 89); and a motion in limine filed on April 23, 2007 (Doc. # 110). These motions were not terminated until after the petitioner's trial. (Doc. # 165). Generally, the Speedy Trial Act time period is tolled while a pretrial motion is pending. See 18 U.S.C. § 3161(h)(1)(D); Hopkins, 310 F.3d at 149. The petitioner has not asserted or cited any authority in support of an argument that the Speedy Trial Act was not tolled while the above-listed pretrial motions were pending. Therefore, after a careful review of the record, the Court finds that no Speedy Trial Act violation occurred and that the performance of the petitioner's attorney did not fall below an objective standard of reasonableness in not moving to dismiss the indictment.

Moreover, the Court was prepared to try this case at any time after the January 4, 2007 pretrial. (Doc. # 94). The delay between the pretrial and jury selection was due to the Court waiting for the attorneys to propose a trial date. In addition, the delay between the initial indictment on August 24, 2005, and the January 4, 2007 pretrial was a result of numerous continuances requested by the petitioner himself and the change in counsel that occurred in November/December 2006. See Hopkins, 310 F.3d at 149-50 ("Although nearly two years passed between Hopkins' initial indictment and the commencement of his trial, his statutory right was not violated because the delay was occasioned almost exclusively by motions and requests from the defendant himself.").

Furthermore, defense counsel Nettles states in his affidavit that he needed the entire six months between his appointment and trial to prepare. (Doc. # 315). This time was needed because

12

of the document-intensive nature of the case, as it required reviewing numerous boxes of documents seized by the Government.  Id.  The amount of time required to prepare for trial is further evidenced by the number of continuances requested by the petitioner's retained counsel before Nettles was appointed.  Nettles states he "would not have sought a trial any speedier than one [they] got."  Id. at p. 6.  He also avers that "[h]ad Mr. Gray insisted on having his trial heard within 30 or 70 days of my appointment, I would have advised the Court that I could not adequately prepare the case for trial in such a short time period and sought a continuance over Mr. Gray's assertion of his Speedy Trial rights pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii)."  Id. at p. 7.

To the extent the petitioner asserts that his attorney did not explain his Speedy Trial Act rights to him, the record reflects otherwise.  Attached to the Court's January 20, 2006 order of continuance is a waiver signed by the petitioner which states the petitioner "hereby waive[s] [his] rights for a speedy trial after being advised by counsel and knowing that by doing so, [he] waive[s] [his] rights under the Speedy Trial Act.  This waiver is given knowingly and willingly with no duress or promise from any party or entity."  (Doc. # 30, attach. 1).  Additionally, the August 23, 2006 consent motion for a continuance is signed by the petitioner and states "[b]y adding their individual signatures hereto, the individual Defendants acknowledge their consent to this request for a continuance and expressly waive any arguable rights under the Speedy Trial Act."  (Doc. # 59).

The Court does not find a Speedy Trial Act violation.  Even if there was a violation, the petitioner's defense was not prejudiced because any such violation would have, at most, resulted in a dismissal without prejudice.  See 18 U.S.C. § 3162(a)(2) (listing factors for courts to consider in deciding whether to dismiss without or without prejudice); United States v. Thomas, 305 Fed. Appx. 960, 964 (4th Cir. 2009) (finding no prejudice under the Strickland standard where alleged Speedy

Trial Act violation "would have, at most, resulted in a dismissal without prejudice"). The petitioner cites no authority indicating that the <u>Strickland</u> prejudice standard is met by demonstrating an attorney should have moved for a dismissal based on a violation that, at most, warranted a dismissal without prejudice. See <u>United States v. Rushin</u>, 642 F.3d 1299, 1309-10 (10th Cir. 2011) (holding prejudice not shown where violation would have resulted in dismissal without prejudice); <u>Chambliss v. United States</u>, 384 Fed. Appx. 897 (11th Cir. 2010) (per curiam) (same); <u>United States v. Flowers</u>, 131 Fed. Appx. 5 (3d Cir. 2005) (same); <u>Campbell v. United States</u>, 364 F.3d 727, 730-31 (6th Cir. 2004) (same).

Finally, "[a] criminal defendant's right under the [Speedy Trial] Act is separate and distinct from his Sixth Amendment right to a speedy trial." <u>Thomas</u>, 305 Fed. Appx. at 963. "Analysis of a Sixth Amendment speedy trial claim is governed by the Supreme Court's holding in <u>Barker[ v. Wingo]</u>, which sets forth four factors to determining whether the right has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the extent of prejudice to the defendant." <u>Id.</u> (citing <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972)). Applying these factors, the Court finds there was no ineffective assistance as a result of the petitioner's attorney not raising a Sixth Amendment challenge.

For these reasons, Ground Three of the petitioner's Section 2255 motion is denied.

### <u>Ground Four</u>

Under Ground Four, the petitioner argues his attorney committed ineffective assistance of counsel "by not diffusing the money laundering counts by failing to present the merits of <u>U.S. v. Santos</u> later adjudicated by the United States Supreme Court."

In United States v. Santos, a four-justice plurality concluded that the term "proceeds" in the federal money laundering statute means "profits" rather than "receipts." 553 U.S. 507, 514 (2008). In Santos, the money-laundering charges brought against one defendant were based on his payments to lottery winners and to his employees, and the charge against another defendant was based on his receipt of payments as an employee. Id. at 524. The plurality concluded that "[n]either type of transaction [could] fairly be characterized as involving the lottery's profits." Id. Justice Stevens, concurring in the judgment, reasoned that "proceeds" need not have a single definition that applies to every unlawful activity. Id. at 525 (Stevens, J., concurring). Justice Stevens concluded that "[t]he revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not 'proceeds' within the meaning of the money laundering statute." Id. at 528 (Stevens, J., concurring). Because Justice Stevens' vote was necessary to the judgment and because his opinion rested on a narrower ground than the plurality's, "[t]he precedential value of Santos is unclear outside of the narrow factual setting of that case." United States v. Brown, 553 F.3d 768, 783 (5th Cir. 2008).

After careful consideration, the Court concludes that Ground Four of the petitioner's Section 2255 motion should be denied. First, the petitioner was convicted on May 16, 2007, and Santos was not decided until June 2, 2008. Consequently, it was not ineffective assistance of counsel for the petitioner's attorney to not argue its holding. Second, Stevens' opinion that "proceeds" may have a different meaning depending on the type of unlawful activity involved means that is unclear what precedential value Santos has for this case. See Brown, 553 F.3d at 785 ("[N]ot even after Santos is the law 'clear' on what the prosecution should be required to prove as 'proceeds' in this case."). Finally, this case is distinguishable from Santos. Counts 26-28 charged the petitioner with

15

depositing cashier's checks that were unlawfully derived from bank embezzlement. The proceeds at issue were embezzled funds Steve Miller sent to Stardancer. The petitioner does not argue that these funds were not the profits of Miller's embezzlement scheme and has not shown that the funds he received from Miller were not the profits of criminal activity. Miller testified that he stole the money from Oakwood Deposits and sent the money to the petitioner in the form of cashier's checks. There is no evidence that the checks at issue in the money laundering counts were anything other than the profits of Miller's illegal embezzlement. For these reasons, the petitioner is not entitled to relief on Ground Four of his Section 2255 motion.[1]

## Ground Five

The petitioner argues in Ground Five that his attorney was ineffective for "not following up on discovery request to prosecutor for minutes of Grand Jury testimony related to the testimony of bank embezzler Mark Steven Miller."

In his affidavit, Nettles responds as follows to the petitioner's allegation:

> During the preparation of Mr. Gray's case, I received numerous summaries of interviews of Steve Miller, prepared by agents of either the FBI, IRS or FDIC. I also obtained pre-polygraph statements made by Steve Miller. I also obtained a copy of a deposition given by Steve Miller while Steve Miller was in prison. I don't recall obtaining minutes of Grand Jury testimony by Steve Miller. Because I could not recall if Mr. Miller testified before the Grand Jury in this case, I contacted Assistant United States Attorney William E. Day, II, who advised me that only agents testified before the Grand Jury, not Mr. Miller. Hence, there are no Grand Jury minutes in this case of Mr. Miller's testimony.

> (Doc. # 315, pp. 7-8).

---

[1] The Court also finds that the petitioner is not entitled to relief based on the other cases he asserts his attorney should have raised. The petitioner does not refer to these two cases, Jeffery K. Skilling v. United States and United States of America v. Stein, in his initial motion but raises them in response to the Government's motion for summary judgment. In addition, the petitioner does not sufficiently demonstrate how these cases would have aided his defense.

After careful consideration, the Court finds that the petitioner has not shown his attorney's performance fell below an objective standard of reasonableness by allegedly not following up on discovery requests for minutes of Grand Jury testimony related to the testimony of Steve Miller. Moreover, the petitioner has not sufficiently demonstrated how these minutes would have aided his defense such that his defense was prejudiced under <u>Strickland</u>. Ground Five of the petitioner's Section 2255 motion is, therefore, denied.

**Ground Six**

In Ground Six, the petitioner asserts his attorney committed ineffective assistance by not effectively challenging the concept of willful blindness with case law and affirmative action by Mr. Gray.

The willful blindness jury instruction was challenged in the petitioner's direct appeal, and the Fourth Circuit held that the Court did not abuse its discretion in giving it. <u>United States v. Gray</u>, 337 Fed. Appx. 365, 367 (4th Cir. 2009) (per curiam). The Court has carefully considered the arguments raised by the petitioner and finds that the petitioner has not shown that his attorney's performance in connection with his challenge to the issuance of this instruction fell below an objective standard of reasonableness. The petitioner also has not demonstrated his defense was prejudiced. Therefore, the petitioner is not entitled to relief on Ground Six of his Section 2255 motion.

**Ground Seven**

In Ground Seven, the petitioner argues he was denied effective assistance of counsel by his attorneys not insisting that he be heard in their challenge of the ex parte freeze order.

On August 22, 2006, the grand jury returned a Second Superseding Indictment which included a forfeiture provision stating that the petitioner, upon conviction of one or more of the crimes charged in Counts 19-25 of the indictment, shall forfeit to the Government any property constituting or derived from proceeds the petitioner obtained directly or indirectly as the result of such violations. (Doc. # 58). The indictment also stated that upon conviction of Counts 26-28, the petitioner would forfeit any property involved in such offenses or traceable to property. (Doc. # 58). The Government then sought a post-indictment protective order to protect and preserve the availability of certain properties that were potentially subject to forfeiture. (Doc. # 73). On November 8, 2006, this Court held a hearing on the motion for a protective order. (Doc. # 79). Two days before the hearing, the Court issued an Order directing that "no property be disposed by Samuel Andrew Gray, Sr. and Marilyn D. Gray or any other individual or entity with control over the property owned by the Grays and that they protect and preserve the property until a hearing can be held." (Doc. # 76). On November 9, 2006, after the hearing, the Court directed that this Order remain in place pending trial and that no assets allegedly subject to forfeiture should be disposed of without the Court's permission. (Doc. # 80). On November 15, 2006, United States Magistrate Judge Thomas E. Rogers, III held a hearing regarding the petitioner's retained counsel. (Doc. # 82). The petitioner's retained counsel argued the protective order created an impermissible conflict of interest because it essentially created a contingent fee arrangement since payment of the remainder of his fees depended upon the petitioner reacquiring the ability to use the assets encumbered by the protective order. (Doc. # 84). The Magistrate Judge concluded that the situation did not violate ethical rules. Id. However, the Magistrate Judge granted defense counsel's motion to withdraw because the protective order meant the petitioner may not be able to pay some of the fees earned and

18

any future fees earned.  Id.  The Magistrate Judge directed that counsel be appointed to represent the petitioner pursuant to the Criminal Justice Act.  Id.

The petitioner asserted on direct appeal that the protective order violated his Sixth Amendment right to counsel.  United States v. Gray, 337 Fed. Appx 365, 367 (4th Cir. 2009) (per curiam).  The Fourth Circuit concluded he was not denied his Sixth Amendment right to counsel.  Id.

After careful consideration, the Court concludes the petitioner is not entitled to relief on Ground Seven of his Section 2255 motion.  The petitioner asserts his counsel should have demanded resolution of whether he had legitimate funds available to fund his defense.  See United States v. Farmer, 274 F.3d 800, 805-06 (4th Cir. 2001) (holding that a defendant who claims he lacks other funds to hire an attorney of his choice has a due process right to hearing to determine whether some of the assets seized are legitimate and might be used to fund defense).  He argues that his wife only faced a forfeiture provision in connection with Counts 19-22 of the Second Superceding Indictment resulting in a maximum financial exposure of approximately $160,000.  He states that he and his wife possessed a retirement account valued at $838,000 and artwork valued at $700,000.  Marilyn Gray identifies the $838,000 as consisting of Europa/Diamond Head Corporation stock in her response to the Government's motion for summary judgment in connection with her Section 2255 motion.  (Doc. # 345, p. 3).  The petitioner asserts a hearing in connection with what assets were subject to the protective order would have resulted in half of the value of the stock and artwork minus the $160,000 being found legitimate and available for defense costs.

In the Second Superceding Indictment, the Government sought forfeiture of any property constituting or derived from proceeds obtained directly or indirectly as the result of the violations

19

listed in Counts 19-25 of the indictment and any property involved in the offenses set forth in Counts 26-28 or traceable to property. The indictment lists $2,000,000 of Europa/Diamond Head Corporation stock and $700,000 of artwork as subject to forfeiture. The stock and artwork were thus allegedly property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offenses charged in Counts 23-25 of the indictment, or property involved in or traceable to property involved in money laundering transactions as charged in Counts 26-28 of the indictment. The petitioner does not assert all of the stock and artwork would have been found legitimate but only Marilyn Gray's half minus the $160,000 in financial exposure she faced in connection with Counts 19-22. However, all property tainted by its relationship to criminal conduct is forfeited to the United States at the time of the criminal conduct giving rise to the forfeiture. United States v. McHan, 345 F.3d 262, 271 (4th Cir. 2003); see also 21 U.S.C. § 853(c). The Government's interest in the stock and artwork vested at the time of the criminal conduct charged in Counts 23-28. As a result, the Government's interest superceded any interest the petitioner's wife may have had in the stock and artwork. See United States v. Phillips, 434 F.3d 913, 916 (7th Cir. 2005) (per curiam). For instance, Counts 26-28 charged that the petitioner committed money laundering by depositing cashier's checks that were derived from specified unlawful activities, that is bank embezzlement, and the Government's interest in these funds vested at the time he deposited the checks. Therefore, the hearing the petitioner advances would not have resulted in any of the $838,000 or $700,000 being found untainted such that it could be used for defense costs, and his counsel was not ineffective for

not moving for such a hearing or for not making these arguments at the hearings that were held.[2]  For these reasons, Ground Seven of the petitioner's Section 2255 motion is denied.

## **CONCLUSION**

For the reasons set forth herein, the Government's motion for summary judgment (Doc. # 318) is hereby **GRANTED**, and the petitioner's motion to vacate pursuant to 28 U.S.C. § 2255 (Doc. # 306) is hereby **DENIED**.  This matter is **DISMISSED** with prejudice.

The Court has reviewed this petition in accordance with Rule 11 of the Rules Governing Section 2255 Proceedings.  The Court concludes that it is not appropriate to issue a certificate of appealability as to the issues raised herein.  The petitioner is advised that he may seek a certificate from the Fourth Circuit Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

s/Terry L. Wooten
TERRY L. WOOTEN
United States District Judge

August 15, 2012
Florence, South Carolina

---

[2] The petitioner has not presented specific evidence of other assets subject to the protective order that may have been legitimate or, assuming such assets existed, that he told his attorney about the assets so they could move to have the protective order lifted with respect to those assets.