IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Marilyn D. Gray, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Criminal No.: 4:05-cr-888-TLW |
| vs. | ) | Civil No.: 4:09-cv-70042-TLW |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

# ORDER

This matter is before the Court for consideration of the <u>pro se</u> motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 filed by Marilyn D. Gray ("petitioner").

On August 22, 2006, the petitioner was charged with 22 counts of criminal conduct in Second Superseding Indictment 4:05-888.  Counts 1-18 charged the petitioner with violating 26 U.S.C. § 7202 and 18 U.S.C. § 2 by failing to pay employment taxes that where collected on behalf of and owed by four companies of which she was executive vice-president.  These four companies were Stardancer Casino, Inc.; Stardancer Casino Florida Corporation; Stardancer Casino Miami Beach Corporation; and Fernandina Cruises, Inc. (collectively referred to as "Stardancer Casinos").  Count 19 charged the petitioner with conspiracy to commit fraud and to defraud the United States, in violation of 18 U.S.C. § 371.  Counts 20-22 charged the petitioner with committing mail fraud, in violation of 18 U.S.C. §§ 1341 and 2.

On May 16, 2007, a jury found the petitioner guilty on all 22 counts.  (Doc. # 160).  The petitioner was sentenced to 42 months of imprisonment as to each of Counts 1 through 22 with all

such terms running concurrently. (Doc. # 230). She also was sentenced to three years of supervised release as to each count with all such terms running concurrently. (Doc. # 230).

On April 8, 2009, the petitioner filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. (Doc. # 267). On September 21, 2010, the Court issued an Order concluding that the petitioner's Section 2255 motion was improperly filed because it was submitted by Samuel A. Gray, who is the husband and co-defendant of the petitioner. (Doc. # 324). The Order gave the petitioner sixty days to personally refile a Section 2255 motion and indicated that if a motion was refiled, the Court would require a response from the Government. (Doc. # 324).

On October 18, 2010, the petitioner refiled a Section 2255 motion. (Doc. # 327). She also filed a response in opposition to a motion for summary judgment the Government submitted in connection with the Section 2255 motion the petitioner's husband filed. (Doc. # 328). John M. Ervin, III, the petitioner's trial defense counsel, filed an affidavit responding to the petitioner's allegations. (Doc. # 337). The Government filed a response to the petitioner's Section 2255 motion and a motion for summary judgment.[1] (Docs. 338, 341). The petitioner also filed a motion for summary judgment and a response to the Government's motion for summary judgment.[2] (Docs. 339, 345).

---

[1] Attached to the Government's response is an affidavit by William F. Nettles, IV, who represented the petitioner's co-defendant and husband, Samuel A. Gray. (Doc. # 338, attach. 4). Nettles prepared this affidavit in response to Samuel Gray's 28 U.S.C. § 2255 motion. Samuel Gray asserts many of the same grounds for relief in his Section 2255 motion as Marilyn Gray does in her motion. (Doc. # 306). In light of this fact and the fact that these defendants were indicted and tried together, the Court finds it appropriate to consider Nettles' affidavit in connection with Marilyn Gray's Section 2255 motion.

[2] In addition, the Court has taken into consideration an affidavit by the petitioner submitted on September 27, 2010. (Doc. # 326).

## 28 U.S.C. § 2255

United States Code, Title 28, Section 2255 provides that a prisoner in custody under sentence of a federal court may file a motion in the court which imposed the sentence to vacate, set aside, or correct the sentence. The statute states four grounds upon which such relief may be claimed: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C.A. § 2255(a). Generally, "28 U.S.C. § 2255 requires [a] petitioner to prove by a preponderance of the evidence that 'the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law.'" Leano v. United States, 334 F. Supp. 2d 885, 890 (D.S.C. 2004) (quoting 28 U.S.C. § 2255(a)). In Leano, the District Court noted that such is "the proof needed to allege a constitutional error." Id. at 890. "[T]he scope of review of non-constitutional error is more limited . . . ; a non-constitutional error does not provide a basis for collateral attack unless it involves a fundamental defect which inherently results in a complete miscarriage of justice, or is inconsistent with the rudimentary demands of fair procedure." United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999) (quotations and citations omitted). In deciding a 28 U.S.C. § 2255 motion, the Court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Court has thoroughly reviewed the motions, files, and records in this case, liberally construing petitioner's pro se motion, and finds that no hearing is necessary.

## BACKGROUND

The petitioner raises seven grounds for relief in her Section 2255 motion. These seven grounds for relief are set forth below verbatim:

1. Denial of effective assistance of counsel. My trial attorney, Mr. John M. Ervin, III induced me to sign a Waiver of Appeal immediately upon conviction on May 16, 2007. I understood from him that my ten day window for appeal began immediately. Had I known that my window of opportunity didn't begin until ten days subsequent from the date of filing the Judgment of Conviction, I would have kept my options open to a future time when I would have been able to understand the issues.

2. Petitioner was wrongly denied her right to counsel of choice. Petitioner's funds for Counsel of her choice were unjustly frozen without adequate hearing.

3. Petitioner's counsel had a conflict of interest which materially compromised the defense. Petitioner's counsel stated a conflict of interest and requested replacement in my motion to the Court.

4. Petitioner, an indigent, was denied funds to be used to rebut experts consulted and called by the prosecutor. Many requests for experts and witnesses were ignored by the Court.

5. The District Court's jury instructions constructively amended the tax counts in the indictment. The indictment was enlarged by the jury instruction adding: "failure to collect the applicable taxes."

6. Request for grand jury minutes never fulfilled. The grand jury indictment filed in August, 2006, was the vehicle to encumber assets far in excess of what was charged in the indictment.

7. The defendant was denied a speedy trial as guaranteed by the Sixth Amendment of the Constitution and the Speedy Trial Act of 1974. The trial occurred nine months after the second superceding indictment.

## STANDARD OF REVIEW

In examining a motion for summary judgment, the Court must determine whether there exists a genuine dispute of material fact. Fed. R. Civ. P. 56. Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine disputes of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249. Though this initial responsibility rests with the moving party, if the non-moving party "fails to properly address" the moving party's assertion of fact, the Court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed R. Civ. P. 56(e); see Celotex, 477 U.S. at 324-26. Thus, the plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. In such a situation, there can be "no genuine dispute as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322-23. The moving party is entitled to judgment as a matter of law because the non-moving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 323 (citation omitted).

## DISCUSSION

### Ground One

The petitioner asserts in Ground One of her 28 U.S.C. § 2255 motion that her attorney committed ineffective assistance of counsel by inducing her to sign a waiver of appeal immediately upon her conviction. She asserts that she understood from her attorney that her ten day window for appeal began immediately. She further argues that if she had known her window for an appeal did

not begin until ten days subsequent to the date of filing of the judgment of conviction, she would have kept her options open to a future time when she would have been able to understand the issues.

A claim of ineffective assistance of counsel is subject to collateral review pursuant to 28 U.S.C. § 2255. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficiencies prejudiced the petitioner's defense to the extent that she was denied a fair trial. Strickland v. Washington, 466 U.S. 668, 687-92 (1984). The petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. As the Court in Strickland observed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Id. (citation omitted).

The petitioner's trial counsel, Mr. Ervin, responds to the petitioner's allegations in his affidavit. (Doc. # 337). He states that he informed the petitioner of her appellate rights, that he never advised her there were no issues to raise on appeal, that he explained the options available to

6

the petitioner, that the petitioner was adamant she did not want to appeal, and that he informed the petitioner one of the potential outcomes of an appeal was another trial with a different sentence.  Id. In her response to the Government's motion for summary judgment, the petitioner states she was told that she had ten days to make a decision regarding an appeal and that no meritorious issues to appeal existed.  (Doc. # 345).  She further asserts that she was distraught seeing her husband, clad in prison attire, being led from the courtroom in handcuffs and that Ervin told her another trial could result in a different sentence, thus intimidating her with a possibly longer sentence.  Id.  She argues that if she had been aware her decision about an appeal could have been deferred until ten days following the entry of judgment, "she would have been of clear mind and joined her husband in the appeal process."  Id.

After careful consideration, the Court concludes that the petitioner is not entitled to relief on Claim One of her Section 2255 motion.  At her sentencing on January 30, 2008, the Court informed the petitioner twice that she had a right to appeal and had until ten days after the entry of judgment in her case to do so.[3]  On the day of her sentencing, the petitioner signed a form indicating she did not wish to appeal.  (Doc. # 223).  This form also clearly states she must appeal within ten days of the entry of judgment.  (Doc. # 223).  Therefore, the record reflects that the petitioner was informed she had until ten days after the entry of judgment to file an appeal.  Additionally, Ervin was correct

---

[3] See Sentencing Transcript, p. 177 (Doc. # 338, attach. 3):
THE COURT: The sentence is imposed as stated.  Ms. Gray, let me advise you, as I advised Mr. Gray, that you do have the right to appeal my sentence and appeal any other matters you choose to appeal.  If you choose to appeal in this case, you will have to do so within 10 days of the entry of judgment in this case.  If you cannot afford an appeal, then one may still be filed on your behalf.
See id., p. 178 (Doc. # 338, attach. 3):
THE COURT: . . . Now, having said that, I want to be clear - - I think I have made it clear - - Ms. Gray, if you choose to appeal, you must do so within 10 days of the entry of judgment in this case. If you cannot afford an appeal, one may still be filed on your behalf.

in stating that if the petitioner was awarded a retrial on appeal, the new trial could result in a different sentence if she were convicted. Thus, there was no error in this regard. Finally, the petitioner indicates that Ervin consulted with her about her appellate options. See United States v. Poindexter, 492 F.3d 263, 268 (4th Cir. 2007) ("[I]n certain circumstances, an attorney is constitutionally required to 'consult' with the defendant concerning the advantages and disadvantages of taking an appeal and to discover the defendant's appellate wishes."). Aside from her conclusory allegation that Ervin stated there were no meritorious issues to appeal, the petitioner provides no evidence or detail as to how Ervin's advice was allegedly inadequate. Moreover, the fact that Ervin informed the petitioner about the possibility of a new trial with a different sentence suggests there was a discussion about the pros and cons of pursuing an appeal. For these reasons, Ground One of the petitioner's Section 2255 motion is denied.

## Ground Two

In Ground Two of the petitioner's Section 2255 motion, she argues she was denied her right to counsel of her choice because her funds were unjustly frozen without an adequate hearing. She asserts "her initial counsel and CJA substitute counsel should have demanded resolution of her available funds for purposes of an adequate legal defense issue." (Doc. # 327, attach. 1, p. 14).

On August 22, 2006, the grand jury returned a Second Superseding Indictment which included a forfeiture provision stating that the petitioner, upon conviction of one or more of the crimes charged in Counts 19-22 of the indictment, shall forfeit to the Government any property constituting or derived from proceeds the petitioner obtained directly or indirectly as the result of such violations. (Doc. # 58). The Government then sought a post-indictment protective order to protect and preserve the availability of certain properties that were potentially subject to forfeiture.

(Doc. # 73).  On November 8, 2006, this Court held a hearing on the motion for a protective order.  (Doc. # 79).  Two days before the hearing, the Court issued an Order directing that "no property be disposed by Samuel Andrew Gray, Sr. and Marilyn D. Gray or any other individual or entity with control over the property owned by the Grays and that they protect and preserve the property until a hearing can be held."  (Doc. # 76).  On November 9, 2006, after the hearing, the Court directed that this Order remain in place pending trial and that no assets allegedly subject to forfeiture should be disposed of without the Court's permission.  (Doc. # 80).  On November 15, 2006, United States Magistrate Judge Thomas E. Rogers, III held a hearing regarding the petitioner's retained counsel.  (Doc. # 82).  The petitioner's retained counsel argued the protective order created an impermissible conflict of interest because it essentially created a contingent fee arrangement since payment of the remainder of his fees depended upon the petitioner reacquiring the ability to use the assets encumbered by the protective order.  (Doc. # 84).  The Magistrate Judge concluded that the situation did not violate ethical rules.  Id.  However, the Magistrate Judge granted defense counsel's motion to withdraw because the protective order meant the petitioner may not be able to pay some of the fees earned and any future fees earned.  Id.  The Magistrate Judge directed that counsel be appointed to represent the petitioner pursuant to the Criminal Justice Act.  Id.

After careful consideration, the Court concludes the petitioner is not entitled to relief on Ground Two of her Section 2255 motion.  In United States v. Monsanto, 491 U.S. 600 (1989), the Supreme Court held that 21 U.S.C. § 853 authorizes a district court to enter a pretrial order freezing assets in a defendant's possession even where the defendant seeks to use the assets to pay an attorney.  See also United States v. Farmer, 274 F.3d 800, 802 (4th Cir. 2001) ("[T]he pre-trial restraint of a criminal defendant's assets does not violate the Constitution as long as the assets are

restrained based upon a finding of probable cause that they are subject to forfeiture."). Thus, it was within this Court's authority to issue the protective order. See 21 U.S.C. § 853; Monsanto, 491 U.S. at 614-15. Moreover, the Court issued the protective order after holding a hearing at which the petitioner was given an opportunity to be heard. (Doc. # 79). Furthermore, the Magistrate Judge held a hearing before allowing the petitioner's retained counsel to withdraw and appointing Mr. Ervin. (Docs. 82, 84).

Additionally, the petitioner asserts her appointed and retained counsel should have demanded resolution of whether she had legitimate funds available to fund her defense. See Farmer, 274 F.3d at 805-06 (holding that a defendant who claims he lacks other funds to hire an attorney of his choice has a due process right to hearing to determine whether some of the assets seized are legitimate and might be used to fund defense). She argues that she only faced a forfeiture provision in connection with Counts 19-22 of the Second Superceding Indictment resulting in a maximum financial exposure of approximately $160,000 and that the remainder of the forfeiture provision related to Counts 23-28 of the indictment, which were against only her husband. She states that she and her husband possessed Europa-Diamond Corporation stock valued at $838,000 and artwork valued at $700,000. She asserts a hearing in connection with what assets were subject to the protective order would have resulted in half of the value of the stock and artwork minus the $160,000 being found legitimate and available to her for defense costs.

In the Second Superceding Indictment, the Government sought forfeiture of any property constituting or derived from proceeds obtained directly or indirectly as the result of the violations listed in Counts 19-25 of the indictment and any property involved in the offenses set forth in Counts 26-28 or traceable to property. The indictment lists $2,000,000 of Europa/Diamond Head

Corporation stock and $700,000 of artwork as subject to forfeiture. The stock and artwork were thus allegedly property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offenses charged in Counts 23-25 of the indictment, or property involved in or traceable to property involved in money laundering transactions as charged in Counts 26-28 of the indictment. The petitioner does not assert all of the stock and artwork would have been found legitimate but only her half minus the $160,000 in financial exposure she faced in connection with Counts 19-22. However, all property tainted by its relationship to criminal conduct is forfeited to the United States at the time of the criminal conduct giving rise to the forfeiture. United States v. McHan, 345 F.3d 262, 271 (4th Cir. 2003); see also 21 U.S.C. § 853(c). The Government's interest in the stock and artwork vested at the time of the criminal conduct charged in Counts 23-28. As a result, the Government's interest superceded any interest the petitioner may have had in the stock and artwork. See United States v. Phillips, 434 F.3d 913, 916 (7th Cir. 2005) (per curiam). For instance, Counts 26-28 charged that Samuel Gray committed money laundering by depositing cashier's checks that were derived from specified unlawful activities, that is bank embezzlement, and the Government's interest in these funds vested at the time he deposited the checks. Therefore, the hearing the petitioner advances would not have resulted in any of the $838,000 or $700,000 being found untainted such that it could be used by the petitioner to fund her defense, and her attorneys were not ineffective for not moving for such a hearing or for not making these arguments at the hearings that were held.[4]

---

[4] The petitioner has not presented specific evidence of other assets subject to the protective order that may have been legitimate or, assuming such assets existed, that she told her attorneys about the assets so they could move to have the protective order lifted with respect to those assets.

For these reasons, Ground Two of the petitioner's Section 2255 motion is denied.[5]

## Ground Three

In Ground Three of her Section 2255 motion, the petitioner argues that the protective order created a conflict of interest for her retained counsel. The petitioner's retained counsel asserted this argument in a counter-motion of counsel to be relieved or, in the alternative, for release of needed funds and continuance that was filed after the Government filed its motion for a protective order and prior to the hearing the District Judge held on November 8, 2006, in connection with the request for a protective order. (Doc. # 77). More specifically, the petitioner's retained counsel argued the protective order created an impermissible conflict of interest because it essentially created a contingent fee arrangement since payment of the remainder of his fees depended upon the petitioner reacquiring the ability to use the assets encumbered by the protective order. Id. The issue of whether the petitioner's retained counsel had a conflict of interest and should be relieved was also addressed at the hearing before the Magistrate Judge on November 15, 2006. (Doc. # 82). In her Section 2255 motion, the petitioner asserts her retained counsel was laboring under a conflict of interest when he represented her at the hearing before the District Judge regarding the protective order on November 8, 2006.

"To establish that a conflict of interest resulted in ineffective assistance, '[m]ore than a mere possibility of a conflict . . . must be shown.'" United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007) ("Nicholson I") (alteration and omission in original) (quoting United States v. Tatum, 943

---

[5] The petitioner's husband also asserted on direct appeal that the protective order violated his Sixth Amendment right to counsel. United States v. Gray, 337 Fed. Appx 365 (4th Cir. 2009) (per curiam). The Fourth Circuit concluded he was not denied his Sixth Amendment right to counsel. Id.

F.2d 370, 376 (4th Cir. 1991)). "The petitioner must show (1) that his lawyer was under 'an actual conflict of interest' and (2) that this conflict 'adversely affected his lawyer's performance.'" Id. (quoting Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)). "If the petitioner can show an actual conflict, and that it adversely affected his lawyer's performance, prejudice is presumed . . . ." Id. "To establish an actual conflict of interest, [the petitioner] 'must show that [his] interests diverged with respect to a material factual or legal issue or to a course of action.'" Id. (second alteration in original) (quoting Gilbert v. Moore, 134 F.3d 642, 652 (4th Cir. 1998) (en banc)); see also Tatum, 943 F.2d at 376 ("When the attorney is actively engaged in legal representation which requires him to account to two masters, an actual conflict exists when it can be shown that he took action on behalf of one" client or failed to take action on behalf of one client because it would have an adverse impact on another). A conflict may not always be "as apparent as when [an attorney] formally represents two parties who have hostile interests." Tatum, 943 F.2d at 376. An attorney "may harbor substantial personal interests which conflict with the clear objective of his representation of the client, or his continuing duty to former clients may interfere with his consideration of all facts and options for his current client." Id.

The Magistrate Judge issued an Order on November 22, 2006, in which he concluded that retained defense counsel's representation of the petitioner did not violate ethical rules. The Magistrate Judge reasoned:

> Based on the record before the court, at the time the defendants' attorneys entered into the representation agreements, they did not anticipate the Protective Order being issued. In other words, they did not anticipate their clients ability to meet their obligations to pay for services would depend on the outcome of the case. Additionally, while practically speaking, the defendants' ability to pay may turn on the outcome of this case, the defendants obligation to pay is not. Also, the amount of defendants' obligation to the attorneys is not contingent on the outcome of this

case, but on the amount of time invested by the attorneys. In these situations, the "fee" is not contingent. It is only the client's ability to pay the fixed fee amount that is contingent.

(Doc. # 84). Retained counsel also argued that the situation created by the protective order may present a conflict of interest based on his interest in a result making funds available to pay his fees but not in the best interest of his client. Id. For instance, an attorney may have an interest in a plea bargain that includes incarceration, or more incarceration, in exchange for a reduced claim to forfeiture of funds. Id. In his Order, the Magistrate Judge reasoned that, while this was possible, it was also speculative and would involve unethical conduct by the attorney and that the petitioner, who was fully aware of this potential conflict, wanted her retained attorney to continue his representation.[6] Id. Although the Magistrate Judge concluded retained counsel's representation of the petitioner did not violate any ethical rules, he granted retained counsel's motion to withdraw because the protective order meant the petitioner may not be able to pay some of the fees earned and any future fees earned. Id.

The petitioner has not sufficiently demonstrated that her retained counsel was operating under a conflict of interest after the Government moved for the protective order. The Court has reviewed the Magistrate Judge's Order in connection with this issue (Doc. # 84) and agrees with the reasoning

---

[6] See November 15, 2006 hearing transcript, pp. 37-38 (Doc. # 241):
THE COURT: So number one, assuming there is an appearance of conflict, because of their source of payment, whether or not they get paid or not, could be related to the outcome of this case.
THE DEFENDANT SAMUEL GRAY: I do not believe - -
THE COURT: Do you have any, does that make you uncomfortable, to the point where you would want them removed as your attorneys?
THE DEFENDANT SAMUEL GRAY: It does not make me at all uncomfortable.
THE COURT: Mrs Gray.
DEFENDANT MARILYN GRAY: No.

contained therein as to why retained counsel's representation of the petitioner did not violate ethical rules. Furthermore, the petitioner has not challenged the Magistrate Judge's conclusion that she was fully aware of the potential conflict created by the Government's motion for a protective order and wanted her retained attorney to continue representing her. Finally, even if a conflict of interest existed, the petitioner has not sufficiently demonstrated that it adversely affected her retained lawyer's performance. See Nicholson I, 475 F.3d at 251-52 (articulating a three-part standard for establishing an adverse effect). For these reasons, the petitioner is not entitled to relief on Ground Three of her Section 2255 motion.

## Ground Four

In Ground Four of her Section 2255 motion, the petitioner asserts her attorney committed ineffective assistance of counsel by not calling expert witnesses. More specifically, the petitioner argues the following witnesses should have been called: William Simon, Nelson Fernandez, Carolyn Moore, Danny Batista, Sheila Milne, and Darrell Smith. In addition, the petitioner asserts her attorneys should have requested a Daubert hearing regarding Gary S. Watts, an expert witness called by the Government.

With respect to William Simon, Mr. Ervin states in his affidavit he was advised by his co-counsel, Bill Nettles, that Simon's testimony would have no evidentiary value as to their defense. (Doc. # 337). As for Darrell Smith, Ervin avers he did not have any information that Smith could present favorable testimony on the petitioner's behalf. Id.

In his affidavit, Mr. Nettles indicates that Mr. and Mrs. Gray consulted with a forensic accounting firm based in Florida prior to the issuance of the protective order. (Doc. # 338, attach. 4). William Simon appears to have been associated with this firm. Nettles states that the Grays

wanted to retain Simon's firm as an expert in their case.  Id.  According to Nettles, the firm quoted a flat fee of $250,000 for its services, which the Grays did not have the ability to pay.  Id.  Nettles did not attempt to obtain the money to pay this retainer because it was "ridiculously high" and an hourly fee would have been more appropriate.  Id.  Nettles also states that an expert was not consulted because the parties were not fighting over the amount of the taxes owed.  Id.  Nettles asserts later in his affidavit that the case was not "'complex' as in hard to understand" but that "there was a lot of information to review" to prepare for trial.  (Doc. # 338, attach. 4, p. 8).

Nelson Fernandez, Carolyn Moore, and Danny Batista were all Stardancer corporate officers who, according to the petitioner, "would have testified to the receipt of funds, believed to be legitimate, from  convicted bank embezzler, Mark Steven Miller, as well as the company's accounting practices and tax matters." (Doc. # 327, attach. 1, p. 19).  Nettles does not recall whether he spoke to these witnesses but states that an unsuccessful attempt was made to locate and serve a subpoena on a Stardancer employee at the last minute, perhaps during trial.  (Doc. # 338, attach. 4).

As for Sheila Milne, the petitioner asserts that she "conducted an audit lasting several months, resulting in her praise of the company's internal controls and company records."  (Doc. # 327, attach. 1, p. 19).  Nettles indicates that the Court issued a subpoena for Milne upon his request and that an attorney from the Internal Revenue Service ("IRS") contacted him and told him the IRS would make every effort to quash the subpoena if he insisted on Milne's appearance.  (Doc. # 338, attach. 4).  According to Nettles, the IRS gave a number of reasons for this and advised him that Milne's testimony would be unfavorable.  Id.  Nettles recalls that while Milne may have praised Stardancer's books, the issue in the case was not that Stardancer attempted to obscure taxes owed through the configuration of its books but that the taxes were not paid.  Id.  Nettles decided to release

Milne from the subpoena.  Id.

Finally, Nettles states that he consulted with Darrell Smith, who was a former Assistant Regional Commissioner of the Criminal Investigative Division of the IRS.  Id.  Prior to being shut down by the Government, Stardancer hired Smith to assist it with the issue of unpaid taxes.  Id. Nettles avers that his conversations with Smith and documentation Smith provided led him to believe that Smith would be a poor witness for Mr. Gray.  Id.  Attached to Nettles' affidavit is an email to Samuel Gray from Nettles dated April 3, 2007, in which Nettles explains why Smith would be "a very dangerous witness" for Mr. Gray.  (Doc. # 338, attach. 4, ex. 1).  Mr. Ervin avers that he did not have any information that Smith could present favorable testimony on the petitioner's behalf. (Doc. # 337).   In Ground Five of her Section 2255 motion, the petitioner asserts Smith "was prepared to testify that Marilyn D. Gray had absolutely nothing to do with matters pertaining to payroll taxes" and that this testimony would have resulted in her being exonerated of these charges. (Doc. # 327, attach. 1, p. 24).  However, the petitioner provides no additional evidence in support of this assertion.

After careful consideration, the Court finds that the petitioner is not entitled to relief on Ground Four of her Section 2255 motion.  The petitioner has not sufficiently demonstrated that her attorney's decision not to call these witnesses or petition the Court for funds for expert witnesses resulted in his performance falling below an objective standard of reasonableness.  Furthermore, the petitioner has not sufficiently shown how these witnesses would have aided her defense to the counts of criminal conduct with which she was charged and thus has not demonstrated a reasonable probably that the outcome of her trial would have been different if some or all of these witnesses had been called.  Finally, the petitioner also has not shown that her attorney's performance fell below an

objective standard of reasonableness by not requesting a <u>Daubert</u> hearing in connection with Gary S. Watts. She has not demonstrated why Watts' background or the bases for his opinions should have been questioned. Additionally, she has not shown a reasonable probability that the outcome of her trial would have been different if Watts' testimony had been excluded or limited.

## **Ground Five**

In Ground Five, the petitioner asserts that the Court constructively amended the tax counts in the indictment. The petitioner asserts the indictment charged her with "willfully failing to truthfully account for and pay over to the Internal Revenue Services all of the said federal income taxes withheld from the listed corporations on the listed dates." (Doc. # 327, attach. 1, p. 23). She argues the indictment was substantially enlarged by the Court instructing the jury that "any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect, truthfully account for and pay over such tax shall be guilty of violating this law." <u>Id.</u>

"A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." <u>United States v. Floresca</u>, 38 F.3d 706, 710 (4th Cir. 1994) (en banc). The petitioner has not shown that the jury instructions to which she cites constructively amended the indictment. She is, therefore, not entitled to relief on Ground Five of her Section 2255 motion.

## **Ground Six**

In support of her request for relief in Ground Six of her motion, the petitioner asserts the following:

> Numerous unfulfilled requests have been made by the co-defendant for the Grand Jury transcripts related to the second superceding indictment filed in August of 2006.
>
> The information contained in these transcripts are the basis for the government illegally freezing the defendant's assets. This information should have been immediately furnished by the Government.

(Doc. # 327, attach. 1, p. 25). In further support of her argument in Ground Six, the petitioner argues in her response to the Government's motion for summary judgment that "such documents would have proved to the Government that the Petitioner was not included in the money laundering counts, thereby freeing assets for attorneys and experts." (Doc. # 345, p. 6).

"In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. at 493. "And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Id.

The petitioner has not demonstrated cause for her failure to pursue this issue on direct appeal or actual prejudice. She also has not demonstrated that refusing to entertain the claim will result in a miscarriage of justice. Therefore, the Court finds she is not entitled to relief on this claim.

## **Ground Seven**

In Ground Seven, the petitioner argues her attorney committed ineffective assistance of counsel by not asserting the indictment against her should be dismissed due to a violation of the Speedy Trial Act.

Generally, the Speedy Trial Act requires that the trial of a defendant who has been charged in an indictment shall commence within seventy days of either (1) the indictment's filing date or (2) the defendant's first arraignment before the court, whichever occurs later. See 18 U.S.C. § 3161(c)(1); see also United States v. Osteen, 254 F.3d 521, 525 (4th Cir. 2001). However, this period may be tolled for many reasons. See United States v. Hopkins, 310 F.3d 145, 149 (4th Cir. 2002). For example, the seventy-day time period is tolled following a defendant's pre-trial motion, 18 U.S.C. § 3161(h)(1)(D), or if the court grants a continuance in order to serve "the ends of justice." 18 U.S.C. § 3161(h)(7)(A). For purposes of the Speedy Trial Act, a trial normally commences with the voir dire of the jury. See United States v. A-A-A Elec. Co., 788 F.2d 242, 246 (4th Cir. 1986). Thus, a trial for purposes of the Speedy Trial Act commences on the date of jury selection.

The petitioner was initially indicted on August 24, 2005, and was arraigned on September 12, 2005. (Docs. 1, 9). On October 3, 2005, a pretrial conference was held at which the parties agreed on a continuance to the January term of Court and the petitioner waived her rights under the Speedy Trial Act. (Docs. 25, 26). On November 3, 2005, the Court entered an order stating the case would be continued until January 15, 2006. (Doc. # 27). On December 15, 2005, the petitioner moved for a continuance, and the Court granted a continuance until the April 2006 trial term. (Docs. 29, 30). Attached to the Court's Order is a waiver of Speedy Trial Act rights signed by the petitioner. (Doc. # 30, attach. 1). A superceding indictment against the petitioner was returned on

January 24, 2006, (Doc. # 32), and an arraignment on the superceding indictment was held on February 8, 2006 (Doc. # 36). At a pretrial conference on March 29, 2006, the petitioner requested a continuance until the September term of Court and waived her rights under the Speedy Trial Act. (Doc. # 41). The United States Magistrate Judge presiding over the pretrial verbally granted the continuance, and the District Judge signed a written order granting the continuance on April 29, 2006. (Doc. # 42). On August 22, 2006, a second superceding indictment was returned against the petitioner. (Doc. # 58). On August 23, 2006, the petitioner filed a consent motion for a continuance beyond the September term of Court. (Doc. # 59). The consent motion states that by adding her signature to the motion, the petitioner acknowledges her consent to the requested continuance and waives any rights under the Speedy Trial Act. (Doc. # 59). On September 6, 2006, the petitioner was arraigned on the Second Superceding Indictment. (Doc. # 65). At a pretrial conference on September 27, 2006, the petitioner requested a continuance beyond the December 2006 term of Court, the Magistrate Judge granted the request, and the petitioner waived her Speedy Trial rights. (Doc. # 69). A written order granting a continuance until the December 2006 term of Court was signed by the District Judge on October 3, 2006. (Doc. # 70). On November 22, 2006, the Magistrate Judge entered an Order granting the motion to withdraw filed by the petitioner's retained counsel. (Doc. # 84). On December 1, 2006, Mr. Ervin was appointed to represent the petitioner. (Doc. # 88). At a pretrial conference on November 29, 2006, the Magistrate Judge continued the case until the January term of Court and noted that the petitioner waived her speedy trial rights on the record at a previous hearing. (Doc. # 85). On January 4, 2007, the Court held a pretrial conference at which the District Judge directed the attorneys to propose a trial date. (Doc. # 94). On April 4, 2007, the case was set for jury selection on May 2, 2007, and trial on May 14, 2007.

(Doc. # 96). On April 6, 2007, the trial date was changed to May 3, 2007. (Doc. # 98). On May 3, 2007, a jury was selected and the petitioner's trial began. (Docs. 136, 137).

Based on the time computations in the petitioner's response to the Government's motion for summary judgment, the petitioner is asserting a Speedy Trial Act violation occurred as a result of the delay between the pretrial conference on January 4, 2007 (Doc. # 94), at which the Direct Judge directed the attorneys to propose a trial date, and jury selection on May 3, 2007. (Doc. # 345, pp. 1-2). The petitioner asserts her attorney should have recognized a violation as a result of the delay and moved to dismiss the indictment. See 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under [the Speedy Trial Act]."). However, during the time period between the January 4, 2007 pretrial and the start of the trial, the petitioner had several pretrial motions pending. These included a motion for disclosure of Rule 404(b) evidence (Doc. # 46); a motion for disclosure of names, addresses and criminal records of witnesses (Doc. # 47); a motion for early production of Jencks material (Doc. # 48); a motion to disclose Grand Jury proceedings (Doc. # 50); and a motion for government agents and attorneys to retain rough notes and writings (Doc. # 51). These motions were not terminated until after the petitioner's trial. (Doc. # 165). Generally, the Speedy Trial Act time period is tolled while a pretrial motion is pending. See 18 U.S.C. § 3161(h)(1)(D); Hopkins, 310 F.3d at 149. The petitioner has not asserted or cited any authority in support of an argument that the Speedy Trial Act was not tolled while the above-listed pretrial motions were pending. Therefore, after a careful review of the record, the Court finds that no Speedy Trial Act violation occurred and that the performance of the petitioner's attorney did not fall below an objective standard of reasonableness in not moving to dismiss the indictment.

Moreover, the Court was prepared to try this case at any time after the January 4, 2007 pretrial. (Doc. # 94). The delay between the pretrial and jury selection was due to the Court waiting for the attorneys to propose a trial date. In addition, the delay between the initial indictment on August 24, 2005, and the January 4, 2007 pretrial was a result of numerous continuances requested by the petitioner herself and the change in counsel that occurred in November/December 2006. See Hopkins, 310 F.3d at 149-50 ("Although nearly two years passed between Hopkins' initial indictment and the commencement of his trial, his statutory right was not violated because the delay was occasioned almost exclusively by motions and requests from the defendant himself.").

Furthermore, Mr. Nettles, in responding to the allegation of the petitioner's husband that he should have moved to dismiss due to a Speedy Trial Act violation, states that he needed the entire six months between his appointment and trial to prepare. (Doc. # 338, attach. 4, p. 6). This time was needed because of the document-intensive nature of the case, as it required reviewing numerous boxes of documents seized by the Government. Id. The amount of time required to prepare for trial is further evidenced by the number of continuances requested by the petitioner's retained counsel before Ervin and Nettles were appointed. Nettles states he "would not have sought a trial any speedier than one [they] got." Id. He also avers that "[h]ad Mr. Gray insisted on having his trial heard within 30 or 70 days of my appointment, I would have advised the Court that I could not adequately prepare the case for trial in such a short time period and sought a continuance over Mr. Gray's assertion of his Speedy Trial rights pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii)." Id. at p. 7.

To the extent the petitioner asserts that her attorneys did not explain her Speedy Trial Act rights to her, the record reflects otherwise. Attached to the Court's January 20, 2006 order of continuance is a waiver signed by the petitioner which states the petitioner "hereby waive[s] [her]

23

rights for a speedy trial after being advised by counsel and knowing that by doing so, [she] waive[s] [her] rights under the Speedy Trial Act. This waiver is given knowingly and willingly with no duress or promise from any party or entity." (Doc. # 30, attach. 1). Additionally, the August 23, 2006 consent motion for a continuance is signed by the petitioner and states "[b]y adding their individual signatures hereto, the individual Defendants acknowledge their consent to this request for a continuance and expressly waive any arguable rights under the Speedy Trial Act." (Doc. # 59).

The Court does not find a Speedy Trial Act violation. Even if there was a violation, the petitioner's defense was not prejudiced because any such violation would have, at most, resulted in a dismissal without prejudice. See 18 U.S.C. § 3162(a)(2) (listing factors for courts to consider in deciding whether to dismiss without or without prejudice); United States v. Thomas, 305 Fed. Appx. 960, 964 (4th Cir. 2009) (finding no prejudice under the Strickland standard where alleged Speedy Trial Act violation "would have, at most, resulted in a dismissal without prejudice"). The petitioner cites no authority indicating that the Strickland prejudice standard is met by demonstrating an attorney should have moved for a dismissal based on a violation that, at most, warranted a dismissal without prejudice. See United States v. Rushin, 642 F.3d 1299, 1309-10 (10th Cir. 2011) (holding prejudice not shown where violation would have resulted in dismissal without prejudice); Chambliss v. United States, 384 Fed. Appx. 897 (11th Cir. 2010) (per curiam) (same); United States v. Flowers, 131 Fed. Appx. 5 (3d Cir. 2005) (same); Campbell v. United States, 364 F.3d 727, 730-31 (6th Cir. 2004) (same).

Finally, "[a] criminal defendant's right under the [Speedy Trial] Act is separate and distinct from his Sixth Amendment right to a speedy trial." Thomas, 305 Fed. Appx. at 963. "Analysis of a Sixth Amendment speedy trial claim is governed by the Supreme Court's holding in Barker[ v.

Wingo], which sets forth four factors to determining whether the right has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the extent of prejudice to the defendant." Id. (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). Applying these factors, the Court finds there was no ineffective assistance as a result of the petitioner's attorney not raising a Sixth Amendment challenge.

## CONCLUSION

For the reasons set forth herein, the Government's motion for summary judgment (Doc. # 341) is hereby **GRANTED**, and the petitioner's motion to vacate pursuant to 28 U.S.C. § 2255 (Doc. # 327) is hereby **DENIED**. The petitioner's motion for summary judgment (Doc. # 339) is **DENIED**. The petitioner's previous 28 U.S.C. § 2255 motion (Doc. # 267), which this Court determined was improperly filed, and the Government's motion for summary judgment in connection therewith (Doc. # 279) are now **MOOT**.[7] This matter is **DISMISSED** with prejudice.

The Court has reviewed this petition in accordance with Rule 11 of the Rules Governing Section 2255 Proceedings. The Court concludes that it is not appropriate to issue a certificate of appealability as to the issues raised herein. The petitioner is advised that she may seek a certificate from the Fourth Circuit Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

s/Terry L. Wooten
August 15, 2012                                    TERRY L. WOOTEN
Florence, South Carolina                           United States District Judge

---

[7] On April 25, 2012, the petitioner moved for additional time to respond to the Government's motion for summary judgment. (Doc. # 342). On May 7, 2012, she filed a response to the Government's motion. (Doc. # 345). Therefore, the petitioner's motion for an extension of time (Doc. # 342) is now **MOOT**.